FILED by \_\_\_\_\_ D.C.
ELECTRONIC

DEC 29, 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.
**08-23546-CIV-HOEVELER/GARBER**

SECURITIES AND EXCHANGE COMMISSION, )
)
Plaintiff, )
)
vs. )
)
RICA FOODS, INC. and CALIXTO CHAVES, )
)
Defendants. )
_____ )

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

**I. INTRODUCTION**

1. Calixto Chaves, while serving as Chief Executive Officer ("CEO") of Rica Foods, Inc. ("Rica"), engaged in pervasive self-dealing. Between 1998 and 2004, Chaves pledged and encumbered numerous assets belonging to Rica in order to secure approximately $37 million in loans that third-parties made to him and entities under his control. Additionally, Chaves caused Rica to purchase approximately $24 million worth of real property and other assets owned, directly or indirectly, by Chaves and his family. Chaves engaged in the related-party transactions because of mounting personal and business debts that ultimately lead to his resignation from Rica in January 2005.

2. Although its most senior executive officer was consummating millions of dollars in related-party transactions, Rica failed to disclose the transactions and encumbrances in the annual and quarterly reports and financial statements the company filed with the Commission between 2000 and 2005. Moreover, Rica significantly

misstated its assets, stockholders' equity, and net income (loss) on its financial statements by improperly recording the value of the assets it purchased from Chaves and his family. In December 2005, eleven months after Chaves resigned from the company and only when confronted about the related-party transactions by a company shareholder, did Rica reveal the transactions to investors in a Form 8-K it filed with the Commission.

3.      By engaging in this conduct, Chaves and Rica violated Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B), and Rules 10b-5, 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, and 240.13a-13. Chaves also violated Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5), and Rules 13a-14, 13b2-1, and 13b2-2, 17 C.F.R. §§ 240.13a-14, 240.13b2-1, and 240.13b2-2.

## II. DEFENDANTS

4.      Chaves, 62, is a citizen of Costa Rica. From August 1996 to August 2004, Chaves served as the CEO and President of Rica, as well as Chairman of the company's board of directors. In August 2004, Chaves resigned as Rica's President and Chairman. In January 2005, he resigned as CEO. In a settled civil action filed by the Commission in August 2003, Chaves and Rica were enjoined from further violations of the books and records, internal controls and officer certification provisions of the federal securities laws. *SEC v. Rica Foods, Inc., et al.,* Civil Action No. 03-22191-CV-King (S.D. Fla. Aug. 15, 2003).

5.      Rica is a Nevada corporation with principal executive offices in City La Ribera de Belen, Heredia, Costa Rica. The Company maintained corporate offices in

2

South Florida from 1996 to 2005. Rica's common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act and, from May 1999 to November 2006, was listed on the American Stock Exchange ("AMEX"). In November 2006, the AMEX delisted Rica for, among other things, failing to file current reports and financial statements with the Commission. Rica's securities are currently traded over-the-counter.

### III. JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa.

7. The Court has personal jurisdiction over Defendants and venue is proper in the Southern District of Florida. At all times relevant to the allegations of this Complaint, Rica maintained corporate offices in the Southern District of Florida. Defendants also undertook acts in the Southern District of Florida that constitute the violations set forth in this Complaint.

8. Defendants, directly or indirectly, made use of the means and instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

### IV. FACTS

#### A. Background of Chaves and Rica

9. In 1969, Chaves founded Rica's principal operating subsidiary and developed it into Costa Rica's largest poultry and animal feed company. In 1996, he brought the company public through a reverse merger with a U.S. corporation and, in the

3

eight years that followed, exercised singular control over the company's operations by serving as its CEO, President, and Chairman and by appointing his family and close friends as directors and senior officers. Additionally, Chaves and his family held a controlling equity interest in Rica.

10. In or about 1998, Chaves began to experience financial problems that worsened between 2000 and 2003 due to a drop in Rica's stock price, several failed commercial ventures, losses from investments in securities, and mounting personal and business debts. Striving to remain financially solvent under these circumstances, Chaves pledged and encumbered assets belonging to Rica and its subsidiaries in order to obtain and secure loans for himself and various entities under his control. Chaves also caused Rica to acquire real property and other assets owned by him, his family, and entities they controlled in exchange for cash and securities.

## B. Chaves' Related Party Transactions

11. On at least twelve occasions between 1999 and 2004, Chaves obtained or maintained loans and lines of credit for himself and entities under his control by pledging as collateral and guaranteeing repayment with assets that belonged to Rica. Chaves and entities he controlled received in aggregate approximately $37 million in proceeds from the loans and lines of credit secured by the Rica assets, most of which were extended by banks and other financial institutions. Rica did not receive any of the borrowed funds.

12. A pledge Chaves made in 2001 typifies the pledges and guarantees he made between 1999 and 2004 for his financial benefit using Rica's assets as collateral. In April 2001, a corporation formed by Chaves borrowed approximately $5 million from a bank. As collateral for the loan, Chaves transferred approximately $5 million worth of

4

investment securities owned by Rica into a guarantee trust established to secure the loan and managed by the bank. The loan remained outstanding, and the investment securities in the possession of the bank, until June 2004 when Chaves paid the bank the approximately $4.3 million outstanding on the loan. In August 2004, after Chaves' debt had been satisfied, the bank returned Rica's investment securities to the company.

13. In addition to securing loans and lines of credit for his own benefit using assets that belonged to Rica, Chaves caused Rica to purchase various assets owned by him, his family, and entities controlled by them. From 1998 to 2004, Rica remitted approximately $24 million in cash and securities to Chaves and his family in exchange for an airplane, the securities and property of two companies, and several parcels of real property (hereinafter collectively referred to as the "Chaves Assets").

14. The approximately $61 million in loan and purchase transactions Chaves consummated with Rica between 1998 and 2004 while serving as the company's CEO were related-party transactions that Rica was compelled to disclose to its stockholders and other investors. Rica, however, failed to make the transactions known to the public until December 2005, eleven months after Chaves resigned from the company.

### C. Rica Failed to Disclose the Related Party Transactions

15. Between 2000 and 2005, Rica filed with the Commission annual reports on Forms 10-K for the fiscal years ended September 30, 2000, through September 30, 2004. It also filed quarterly reports on Forms 10-Q from the three-month period ending December 31, 1999 through the three-month period ending June 30, 2005. The reports were accompanied by Rica's financial statements for the relevant periods.

5

16. Item 404(a) of Regulation S-K under the Exchange Act, 17 C.F.R. § 229.404(a), required Rica to disclose in the annual and quarterly reports it filed with the Commission any and all transactions exceeding $60,000 in which it was a party and in which its CEO had a direct or indirect interest. Additionally, Rule 4-08(k) of Regulation S-X under the Exchange Act, 17 C.F.R. § 210.4-08(k), and Generally Accepted Accounting Principals ("GAAP") required Rica to identify and explain all related-party transactions on its financial statements accompanying its annual and quarterly reports.

17. Contrary to Commission regulations and GAAP, Rica did not disclose in the annual and quarterly reports it filed with the Commission between 2000 and 2005 the pledges and guarantees Chaves made using the company's assets or the terms of the underlying loans and credit facilities that benefited Chaves and entities controlled by him. Further, although Rica disclosed in its reports the Chaves Assets it purchased, it did not reveal that the company had purchased the assets from Chaves, his family, and entities controlled by them. Rica thereby prevented its stockholders and other investors from considering the potential risks the approximately $61 million in loan and purchase transactions consummated by Chaves presented to the company.

### D. Impact of Improper Recording of Chaves Assets on Rica's Financials

18. Rica, moreover, improperly recorded the value of the Chaves Assets on its financial statements. Since Rica purchased all of the Chaves Assets from Chaves, his family, and entities controlled by them, GAAP required Rica to recognize the buyers and sellers to be under common control and to record the Chaves Assets on a carry-over basis or at the prices Chaves, his family, and the entities they controlled paid for the assets.

Instead, Rica recorded the Chaves Assets at a step-up in basis or at the prices it paid for the assets, which were substantially higher.

19. By improperly recording the Chaves Assets at a step-up in basis, Rica materially overstated its assets in its Forms 10-K for fiscal years 2002, 2003, and 2004, and in its quarterly reports on Forms 10-Q for the first three quarters of fiscal 2005 by between $10.7 million (13%) and $14.7 million (24%). It also materially overstated its stockholders' equity for the same periods by between $8.7 million (58%) and $13.2 million (178%). Additionally, during the first three quarters of fiscal 2005, Rica materially overstated its net income by $196,477 (12%), $256,155 (27%), and $339,977 (24%), respectively.

### E. Rica Lacked Adequate Internal Controls

20. From 1995 to 2005, Rica failed to devise and maintain adequate internal controls sufficient to ensure that its financial statements were prepared in conformity with GAAP. Moreover, Chaves circumvented the internal controls that Rica did have by failing to disclose to Rica's Board of Directors, Chief Financial Officer, and independent auditor that the transactions he effected encumbered Rica's assets or his control over the entities from which Rica purchased the Chaves Assets.

### F. Chaves' Certifications

21. Beginning in 2002, Chaves, serving as Rica's CEO, was required pursuant to Rule 13a-14 under the Exchange Act, 17 C.F.R. § 240.13a-14, to certify to the best of his knowledge that the annual and quarterly reports Rica filed with the Commission on Forms 10-K and Forms 10-Q, respectively, did not misstate or omit material facts and fairly presented, in all material respects, Rica's financial condition and

7

results of operation. Between 2000 and 2004, Chaves certified Rica's annual and quarterly reports and accompanying financial statements as accurate despite the fact that the tens-of-millions of dollars in related-party loan and purchase transactions he had effected with the company were not disclosed in the reports or financial statements.

22. Additionally, between 2002 and 2004, Rica's auditors requested Chaves disclose to them any related-party transactions he was aware of in connection with their annual audits of Rica's financial statements and Chaves responded to the request by providing the auditors with a written management representation letter, falsely affirming he was not aware of any related-party transactions.

### G. Chaves' Resignation and Rica's Subsequent Disclosures

23. In mid-2003 Chaves' financial condition became dire and in December 2003, he was forced to sell the controlling equity interest he and his family held in Rica. After Chaves ceded equitable control of Rica, new management was appointed to operate the company and, in August 2004, Chaves resigned as President and Chairman of the company and, in January 2005, as its CEO.

24. In December 2005, Rica filed a Form 8-K with the Commission disclosing one of its shareholders had alleged Chaves, while serving as CEO of the company, had engaged in certain undisclosed related-party transactions to the detriment of the company's stockholders and other investors. In response to the allegations, Rica initiated an internal investigation into the related-party transactions and informed the public its consolidated financial statements dating back to December 1999 could no longer be relied upon and would require restatement.

8

25. In February 2008, Rica completed its internal investigation into the related-party transactions and filed a second Form 8-K with the Commission disclosing the details of the approximately $61 million in loan and purchase transactions Chaves consummated while CEO of the company and restating, on an unaudited basis, its financial statements for fiscal years 2003 and 2004, and the first three quarters of 2005 to reflect the transactions. The restated financial statements also included corrections for the cumulative effect of all errors resulting from the related-party transactions that Rica identified in fiscal year 2002 and prior years. Additionally, the Form 8-K and restated financial statements reflected Chaves had repaid all of the loans and credit facilities he had secured with assets belonging to Rica by August 2004.

## COUNT I

### Chaves and Rica Violated Section 10(b) of the Exchange Act and Rule 10b-5

26. The Commission repeats and realleges paragraphs 1 through 25 of this Complaint as if fully set forth herein.

27. From at least 2000 to 2005, Chaves and Rica, directly or indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, in connection with the purchase or sale of securities, as described in this Complaint, knowingly, willfully, or recklessly: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

9

28. By reason of the foregoing, Chaves and Rica, directly or indirectly, violated Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. §240.10b-5.

## COUNT II

### Rica Violated Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 and Chaves Aided and Abetted Rica Violations

29. The Commission repeats and realleges paragraphs 1 through 25 of this Complaint as if fully set forth herein.

30. From at least 2000 to 2005, Rica, under the control and at the direction of Chaves, did not file factually accurate annual and quarterly reports on Forms10-K and Forms 10-Q with the Commission and failed to include material information in the reports that was necessary to make statements contained in the reports not misleading.

31. By reason of the foregoing, Rica violated Section 13(a) of the Exchange Act, 15 U.S.C. §78m(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.

32. By reason of the foregoing, Chaves aided and abetted Rica's violations of Section 13(a) of the Exchange Act, 15 U.S.C. §78m(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.

## COUNT III

### Rica Violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Chaves Aided and Abetted Rica's Violations

33. The Commission repeats and realleges paragraphs 1 through 25 of this Complaint as if fully set forth herein.

10

34.     From at least 2000 to 2005, Rica, under the control and at the direction of Chaves, failed to make and keep, books, records, and accounts, which in reasonable detail, accurately and fairly reflected the transactions and dispositions of Rica's assets.

35.     From at least 2000 to 2005, Rica, under the control and at the direction of Chaves, failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (1) transactions were executed in accordance with management's general or specific authorization; (2) transactions were recorded as necessary (a) to permit preparation of financial statements in conformity with GAAP or any other criteria applicable to such statements or (b) to maintain accountability of assets; (3) access to assets was permitted only in accordance with management's general or specific authorization; or (4) the recorded accountability for assets was compared with existing assets at reasonable intervals and appropriate action was taken with respect to any differences.

36.     By reason of the foregoing, Rica violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §78m(b)(2)(A) and (b)(2)(B).

37.     By reason of the foregoing, Chaves aided and abetted Rica's violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §78m(b)(2)(A) and (b)(2)(B).

## COUNT IV

### Chaves Violated Section 13(b)(5) of the Exchange Act and Rule 13b2-1

38.     The Commission repeats and realleges paragraphs 1 through 25 of this Complaint as if fully set forth herein.

11

39. From at least 2000 to 2004, Chaves knowingly circumvented Rica's internal accounting controls or knowingly failed to implement a system of internal accounting controls for Rica, and knowingly falsified books, records, or accounts subject to Section 13(b)(2) of the Exchange Act, 15 U.S.C. §78m(b)(2).

40. By reason of the foregoing, Chaves violated Section 13(b)(5) of the Exchange Act, 15 U.S.C. §78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-1.

## COUNT V

### Chaves Violated Rule 13b2-2 under the Exchange Act

41. The Commission repeats and realleges paragraphs 1 through 25 of this Complaint as if fully set forth herein.

42. From at least 2000 to 2004, Chaves, directly or indirectly, made or caused to be made materially false or misleading statements or omitted to state, or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with an audit, review, or examination of Rica's financial statements or the filing of reports required to be filed with the Commission.

43. By reason of the foregoing, Chaves violated Rule 13b2-2 under the Exchange Act, 17 C.F.R. §240.13b2-2.

## COUNT VI

### Chaves Filed False Certifications

44. The Commission repeats and realleges paragraphs 1 through 25 of this Complaint as if fully set forth herein.

12

45. From at least 2002 to 2004, in annual reports filed on Forms 10-K and quarterly reports filed on Forms 10-Q, Chaves falsely that to the best of his knowledge there were no untrue statement of material fact or omission of a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

46. By reason of the foregoing, Chaves violated Rule 13a-14 of the Exchange Act, 17 C.F.R. §240.13a-14.

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine, and find that Chaves and Rica have committed the violations of the federal securities laws alleged in this Complaint.

### II.

### Permanent Injunctive Relief

Issue a Permanent Injunction enjoining Chaves and Rica, their officers, agents, servants, employees, attorneys, representatives, and all persons in active concert or participation with them, and each of them, from violating Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §§78j(b), 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B), and Rules 10b-5, 12b-20, 13a-1, and 13a-13 theunder, 17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, and 240.13a-13, and enjoining Chaves, his officers, agents, servants, employees, attorneys, representatives, and all persons in active concert or participation with him, and each of them, from further

13

violating Section 13(b)(5) of the Exchange Act, 15 U.S.C. §78m(b)(5), and Rules 13a-14, 13b2-1, and 13b2-2 thereunder, 17 C.F.R. §§ 240.13a-14, 240.13b2-1 and 240.13b2-2.

## III.

### Civil Money Penalties

Issue an Order directing Chaves to pay a civil money penalty pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. §78u(d).

## IV.

### Officer and Director Bar

Issue an Order permanently barring Chaves from acting as an officer or director of a publicly-held company pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. §78u(d)(2).

## V.

### Further Relief

Grant such other relief as the Court may deem just and appropriate.

## VI.

## **Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

December __, 2008

Respectfully submitted,

_Robert K. Levenson_
Robert K. Levenson
Regional Trial Counsel
Florida Bar No. 0089771
Direct Dial No. (305) 982-6341
levensonr@sec.gov
Attorney for Plaintiff
Securities and Exchange Commission
801 Brickell Avenue   Suite 1800
Miami, FL  33131
(305) 982-6300
(305) 536-4154 (facsimile)

15

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

### I. (a) PLAINTIFFS
SECURITIES AND EXCHANGE COMMISSION

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Securities and Exchange Commission
Robert K. Levenson, Esq., (305) 982-6341
801 Brickell Avenue, Suite 1800
Miami, Florida 33131

### DEFENDANTS
RICA FOODS, INC. and CALIXTO CHAVES

County of Residence of First Listed Defendant  Costa Rica
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

FILED by _____ D.C.
DEC 29 2008
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

Attorneys (If Known)
SEE ATTACHMENT

**(d)** Check County Where Action Arose: ✓ MIAMI-DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
✓ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

Dade 08CV23546 - Hoeveler/Garber

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|                                    | PTF | DEF |                                                              | PTF | DEF |
|------------------------------------|-----|-----|--------------------------------------------------------------|-----|-----|
| Citizen of This State              | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State    | ☐ 4 | ☐ 4 |
| Citizen of Another State           | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                                         | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ✗ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

### V. ORIGIN (Place an "X" in One Box Only)
✓ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ✓ YES ☐ NO
JUDGE James Lawrence King    DOCKET NUMBER 03-22191-CV-KING

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. §78j(b; 17 C.F.R. §240.10b-5; 15 U.S.C. §78m(a), 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13; 15 U.S.C. §78m(b)(2)(A) and (b)(2)(B). Violations of the federal securities laws.
LENGTH OF TRIAL via ___ days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Permanent Inj., Civil Penalty
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ✓ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
Robert K. Levenson, Esq. /s/ Robert K. Levenson
DATE 12-23-08

FOR OFFICE USE ONLY
AMOUNT _____  RECEIPT # _____  IFP _____